*LESSEE OF JOSEPH CREPS v. DAVID WILKINSON. [200

The grant of lands by the United States for the Black Swamp road, did not pass lands sold on credit in 1817, the credit for which had been extended.

EJECTMENT, for lot 93, in Perrysburgh. From Wood. The plaintiff shows a patent from the United States, for the lot, dated in 1834. The defendant traces his title to a deed from the governor of Ohio, to McKnight, in 1830. The authority to make this deed depends upon the extent of a grant made by act of Congress to the State of Ohio, in 1823, for the Black Swamp road. By section 2 of that act, Swan's L. L. 153, " a tract of land one hundred and twenty feet wide, on which to locate the road, together with a quantity of land, equal to one mile on each side thereof, is granted to the state." The third section of the same act provides, that " in case any of the lands, through which it may be thought expedient to open the road, may have been previously sold by the United States, the secretary of the treasury is directed to pay over the net proceeds of the sales of the quantity thus sold, at the minimum price." Lot 93 was sold by the United States at the land sales in Wooster, in 1817, and one-fourth of the purchase money paid. The other installments not being paid, the land became liable to forfeiture. The defendant claims that it was forfeited, and being *then* the absolute property of the United States, it passed to Ohio by this general grant, within the limits of which it is admitted to lie.

J. STETSON, for the plaintiff.

COFFINBERRY and SPINK, for the defendant.

By the Court, LANE, C. J. It will be remembered that when this lot was sold, in 1817, the credit system for the purchase money of public lands, was in operation. Our government had, at all times, been a lenient creditor. It has never been its policy to enforce the forfeiture of land against purchasers, with any degree of strictness. A system of relief laws was early adopted, and times of payment were extended by various regulations, until, the general act of March, 1821, abolishing all sales upon credit. By this act debtors for lands were classified, and a forfeiture not,

199

exacted until a non-payment of three months after the times thus extended. Under these acts the rights of the purchaser of this lot were not extinguished until 1829. This arrangement Congress had a right to make; the land was liable to become forfeit, but 201] Congress only could take advantage of the *neglect of the purchaser, to divest him of his title to the lands. By this act, the privilege was waived, and the forfeiture postponed until after the neglect to pay the last installment.

Such were the rights of the purchaser at the time of the grant to the State of Ohio. The terms of section 1 are large enough to embrace the lot in question; but section 3 relates to lots "which may have been sold," and secures to the State of Ohio the net avails only of such lots at a minimum price, implying that the land itself was not conveyed, but remained in the United States. The grant took its whole effect at its date, and conveyed only those lands "which had not been sold," not those in which individuals had an interest, and which might afterward revert to the United States by forfeiture. At the time of the grant the United States recognized an interest in the original purchaser, which they assumed to protect, and evidently did not mean to convey to the state. Judgment for the plaintiff.

---

Samuel Strong, for the use of C. Reed, *v.* S. R. Darling and S. B. Walcott.

A contract for the sale of a town lot is valid, although the town has not been surveyed, platted, and recorded, according to the provisions of the statute.

A statutory imposition of a mere penalty upon the performance of an act, does not necessarily vitiate the contract itself.

Covenant. From Lorain. The suit is brought upon a sealed land contract between the parties, dated March 22, 1836, by which the defendants "bind themselves, their heirs and administrators, to pay or cause to be paid to the plaintiff, his heirs, etc., the sum of $350, in manner following—that is to say, fifty dollars on July 1, 1836; $100 on April 1, 1837; and $100 annually thereafter until